FILED

2004 FEB 17 P 2: 35

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIO PIROZZOLI <br>       Plaintiff | CIVIL ACTION NO. <br> 302CV00698CFD |
| v. | |
| TOWN OF BERLIN, BERLIN INLANDS WETLANDS AND WATERCOURSES COMMISSION, JAMES P. HORBAL, individually and in his official capacity, E. TIMOTHY SULLIVAN, JR., individually and in his official capacity, MICHAEL BALINSKAS, RALPH SIMEONE, RAYMOND JEREMA, CLEVELAND P. HUGGINS, III, TOMAS GERDIS <br>       Defendants | FEBRUARY 5, 2004 |

**OBJECTION TO MOTION TO RE-OPEN COURT'S DECISION RE: MOTION FOR A MORE DEFINITE STATEMENT**

I. **INTRODUCTION**

The Defendants, Town of Berlin, Berlin Inlands Wetlands and Watercourses Commission ("IWWC"), James P. Horbal, E. Timothy Sullivan, Jr., Michael Balinskas, Ralph Simeone, Raymond Jarema, Cleveland Huggins, and Tomas Gerdis, hereby submit this

---

SILVESTER & DALY
72 RUSS STREET • HARTFORD, CONNECTICUT 06106 • (860) 278-2650 • FAX (860) 727-9243

Objection to the Plaintiff's Motion to Re-Open the Court's Decision regarding the Motion for a More Definite Statement. The Defendants assert that the Plaintiff fails to set forth any proper reasons for the court to reconsider its decision on the Motion for a More Definite Statement.

## II.   FACTS

The Plaintiff filed a Request for Leave to Amend Complaint and an Amended Complaint, dated July 1, 2003. In the Amended Complaint, the Plaintiff added allegations against Attorney Timothy Sullivan and claimed that Attorney Sullivan had held secret meetings with members of the IWWC in violation of the Freedom of Information Act. In response to the Amended Complaint, the Defendants filed a Motion for a More Definite Statement, requesting that the Plaintiff identify when the alleged secret meetings occurred. Absent Objection, the court, *Droney, J.*, granted the Defendants' Motion for a More Definite Statement on December 3, 2003.

The Plaintiff now moves to re-open the court's decision on the Motion for a More Definite Statement based on the contention that he did not receive the Motion for a More Definite Statement.

## III.   LAW AND ARGUMENT

2

Pursuant to Local Rule of Civil Procedure 7 (c), "[m]otions for reconsideration shall be filed and served within ten (10) of the filing of the decision or order form which relief is sought, and shall be accompanied by a memorandum setting for forth concisely the matters or controlling decisions which counsel believes that Court overlooked in the initial decision or order." L. Civ. R. 7 (c). Motions for reconsideration "are, as a practical matter the same thing as motions for amendment of the judgment under Fed. R. Civ. P. 59 (e). City of Hartford v. Chase, 942 F.2d 130, 133 (2d Cir. 1991). Therefore, a motion for reconsideration must "adhere to stringent standards." Gold v. Dalkon Shield Claimants Trust, No. 5:82-CV-383 (EBB) 1998 WL 422900 at *2 (D.Conn. 1998) (See Attached).

"The movant must show that the court overlooked matters or controlling decisions which might reasonably have altered the court's result. Schonberger v. Serchuk, 742 F. Sup. 108, 119 (S.D.N.Y.1990)." U.S. v. Mills, No. 3:03CR00032 (DJS) 2004 WL 57282, *1 (D.Conn. 2004) (See Attached). "Rule 59 (e) recognizes only three possible grounds for any motion for reconsideration: (1) an intervening change in the law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice." Gold, supra, 1998 WL 422900 at *2. "The application of these standards is intended to prevent wasteful repetition of

arguments already briefed, considered and decided. Schonberger, 742 F. Supp. at 119." (Internal quotation marks omitted.) Mills, supra, No. 3:03CR00032 (DJS) 2004 WL 57282, *1. "Admittedly, a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (C.A.2 (N.Y.) 1995).

The Plaintiff fails to assert any of the proper reasons for the court to reconsider its decision on the Motion for a More Definite Statement. The Plaintiff fails to argue that there has been a change in the law since the decision was rendered; that there is no evidence that would effect the court's decision; or that a clear error was made, creating a manifest injustice. Rather, the Plaintiff's only claim is that he did not receive the Motion for a More Definite Statement.

The Defendants, however, assert that their Motion for a More Definite Statement is dated July 30, 2003, and that it was sent via United States mail to the Plaintiff's attorney on July 30, 2003. The Plaintiff had ample time to respond to the Motion for a More Definite Statement and failed to do so. Furthermore, the court has already ruled on the Motion and entered its decision in favor of the Defendants. Thus, pursuant to Local Rule 7 (c), the Plaintiff fails to meet any of the requirements that are necessary in

order for the court to reopen or reconsider its decision. As such, the court should deny the Plaintiff's Motion to Re-Open.

## IV. CONCLUSION

Based on the foregoing reasons, the Defendants request that the court deny the Plaintiff's Motion to Re-Open the Court's Decision Re: Motion for a More Definite Statement.

THE DEFENDANTS,
TOWN OF BERLIN, BERLIN INLANDS WETLANDS AND WATERCOURSES COMMISSION, JAMES P. HORBAL, individually and in his official capacity, E. TIMOTHY SULLIVAN, JR., individually and in his official capacity, MICHAEL BALINSKAS, RALPH SIMEONE, RAYMOND JEREMA, CLEVELAND P. HUGGINS, III, TOMAS GERDIS

By: /s/ Josephine A. Spinella
JOSEPHINE A. SPINELLA
Silvester & Daly
72 Russ Street
Hartford, CT 06103
Tel. (860) 278-2650
Federal Bar No. CT24009

## CERTIFICATION

I, Josephine A. Spinella, attorney for the Defendants, hereby certify that a copy of the foregoing has been mailed, postage prepaid, in the United States Mail, this 13th day of February, 2004 to:

Vincent T. McManus, Jr.
116 South Main Street
Wallingford, CT 06492

James P. Mooney, Esq.
Law Office of Kelly & Mooney
2452 Black Rock Turnpike
Fairfield, CT 06432

By: /s/ J. A. Spinella
JOSEPHINE A. SPINELLA
Silvester & Daly

nai-pirozzoli/obj mot. to reopen.010504

Slip Copy
(Cite as: 2004 WL 57282 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

UNITED STATES OF AMERICA,
v.
Gary MILLS a/k/a "G Knocker"

No. 3:03CR00032(DJS).

Jan. 8, 2004.

Richard S. Cramer, Wethersfield, CT, for Defendant.

James I. Glasser, Karen L. Peck, Kevin J. O'Connor, U.S. Attorney's Office-NH, New Haven, CT, for Plaintiff.

*MEMORANDUM OF DECISION*

SQUATRITO, J.

*1 The United States has motioned this court to reconsider its ruling [doc. # 35] granting defendant Gary Mills's motion to suppress statements he made to New Haven Police detectives on June 18, 2002. The Government raises two variations of a single argument in support of its motion. First, the government re-states a previous claim that the defendant's Sixth Amendment right to counsel had not attached at the time of his statements to the police. Second, the Government claims that an issue of dual sovereignty under the Sixth Amendment precludes a finding that the defendant's right to counsel in this federal prosecution had attached on June 18, 2002.

STANDARD OF REVIEW

The Government's motion for reconsideration is treated as a motion under Local Rule of Civil Procedure 7(c). D.Conn. L. Civ. R. 7(c). Rule 7(c) [FN1] motions "are, as a practical matter the same thing as motions for amendment of the judgment under Fed.R.Civ.P. 59(e)" [FN2] and are treated under the standard for this federal rule. Accordingly, a motion for reconsideration must "adhere to stringent standards." *Gold v. Dalkon Shield Claimants Trust,* No. 5:82-CV-383 (EBB), 1998 WL 422900 at *2 (D.Conn.1998). The movant must show that the court overlooked matters or controlling decisions which might reasonably have altered the court's result. *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990). Specifically, "Rule 59(e) recognizes only three possible grounds for any motion for reconsideration: (1) an intervening change in the law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice." *Gold,* 1998 WL 422900 at *2; *See also, Doe v. New York City Dep't of Social Services,* 709 F.2d 782, 789 (2d. Cir.1983). The application of these standards is intended to prevent "wasteful repetition of arguments already briefed, considered and decided." *Schonberger,* 742 F.Supp. at 119.

FN1. Rule 7(c) was formerly codified as D.Conn.L.Civ.R. 9(e). The rule reads: "1. Motions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order."

FN2. *City of Hartford v. Chase,* 942 F.2d 130, 133 (2d Cir.1991).

DISCUSSION

The government raises two major claims in its motion for reconsideration. First, the government claims that the defendant's right to counsel under the Sixth Amendment had not attached at the time the defendant spoke to police. Second, the government claims that the court's ruling raises concerns about the interplay of dual sovereigns in our federal system.

The first of the government's claims can itself be separated into two distinct lines of analysis. The opening of the government's memorandum constitutes a more focused re-hashing of arguments made by the government in its original motion in opposition to the defendant's effort to suppress the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 57282 (D.Conn.))

Page 2

controverted statements. [doc. # 25]. Although the government engages in a more detailed analysis of certain cases, there is nothing that rises to the level required for reconsideration. The remainder of the government's first argument focuses on state court precedent that the government suggests this court overlooked.

*2 This court recognizes the primacy of the Connecticut Supreme Court in resolving questions under Connecticut law, but the government has not presented any "controlling decisions" that demand reconsideration of the prior ruling in this matter. The Connecticut Supreme Court has never ruled directly on the relationship between a defendant's right to counsel and the filing of an information. [FN3] The existing Connecticut precedent shows neither changes in law since the court's ruling nor the discovery of material previously unavailable. The Connecticut cases also do not persuade this court that its prior ruling can be thought to contravene clearly existing law. At best, the government has made a somewhat more persuasive argument than in its original brief on this issue, but this is not enough to warrant reconsideration.

> FN3. The Connecticut Supreme Court has held that the issuance of an arrest warrant does not trigger a right to counsel under the Connecticut constitution. *State v. Falcon,* 196 Conn. 557, 494 A.2d 1190 (1985). The Court has also held that there is a distinction, for purposes of determining the attachment of the right to counsel, between the arrest of a defendant and the filing of an "information or indictment." *State v. Vitale,* 190 Conn. 219, 232-233, 460 A.2d 961 (1983). The Court has also suggested that a defendant's right to counsel could attach upon the filing of an information if the defendant has not effectively waived his right to counsel. *State v. Lewis,* 220 Conn. 602, 611-613, 600 A.2d 1330 (1991). The Connecticut Supreme Court has not definitively resolved this issue.

The second argument put forth by the Government also fails to meet the standard for reconsideration. The government claims that there can be no violation of the defendant's sixth amendment rights because the federal government had not initiated any action against the defendant at the time Mills made his statements to police. The Supreme Court has held that the right to counsel is "offense specific." *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158. The Supreme Court has also held that the determination of whether one offense is separate from another offense for purposes of the right to counsel should be determined by application of the test outlined in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See, Texas v. Cobb,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). Thus, it may be that the Sixth Amendment right to counsel had not attached in this federal case at the time Mills spoke to local police. This, however, is not a relevant question. The issue in this case is whether the statements made to local police officers during the course of questioning that violated the Sixth Amendment rights of the defendant in a state case may be used by the federal government to prove other crimes arising out of the same transaction. The constitutional parameters of the present issue have not been determined by the Supreme Court. Thus there is no controlling decision that instructs this court to reconsider.

The Second Circuit has acknowledged that the Sixth Amendment does not prohibit the questioning of an individual regarding other crimes as to which the right to counsel has not yet attached. *U.S. v. Mapp,* 170 F.3d 328, 334 (1999). The issue here is different-there are no statements present in this case that derive from the questioning of a defendant regarding crimes as to which his right to counsel had not attached. *Mapp* refused to adopt a rule developed in *United States v. Martinez,* 972 F.2d 1100 (9th Cir.1992) that might permit the use of such statements absent a showing of control or manipulation on the part of federal officials. *Mapp,* 170 F.3d at 334. A key to the *Mapp* analysis was the lack of evidence of impropriety in the underlying interrogation. Here, the court's prior ruling establishes that the underlying interrogation was constitutionally deficient, and so the application of *Mapp* is uncertain. [FN4] The speculative application of an analogous precedents is not sufficient to justify reconsideration under the applicable standard.

> FN4. It is important to note the factual distinction between this case and *Mapp.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 57282 (D.Conn.))

Page 3

The *Mapp* court considered the question of whether federal agents, while investigating a possible federal crime arising out of a criminal transaction that also gave rise to a state charge, could interrogate a defendant who had been charged with a state crime where the state charges had been dropped prior to the federal investigation but after the right to counsel on the state charge had attached. Here, there is no federal investigation. Rather, the federal government seeks to use the fruits of an unconstitutional interrogation conducted solely by local police. *Mapp* does not squarely address this issue.

## CONCLUSION

*3 The Government's motion for reconsideration is DENIED. The court reviews motions for reconsideration under a strict standard, and the Government has not shown matters or controlling decisions that require reconsideration of the prior ruling.

2004 WL 57282 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 422900
(Cite as: 1998 WL 422900 (D.Conn.))

Page 1

H
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Lynn GOLD, Plaintiff
v.
DALKON SHIELD CLAIMANTS TRUST,
Defendant

No. 5:82-CV-383 (EBB).

July 16, 1998.

*RULING ON PLAINTIFF'S MOTION TO RECONSIDER AND RE-ARGUE*

BURNS, Senior J.

### INTRODUCTION

*1 On June 15, 1998, this Court granted the Dalkon Shield Claimants Trust's ("Trust" or "Defendant") Motion for Summary Judgment, holding that the case commenced by Lynn Gold ("Ms. Gold" or "Plaintiff") was deficient as a matter of law due to her inability to meet her burden of proof as to causation. This deficiency warranted the grant of summary judgment in that Plaintiff had failed to retain an expert to testify to the causal link between any defects in the Dalkon Shield and her injuries, despite this Court granting numerous extensions of time for Ms. Gold to do so.

On June 25, 1998, Ms. Gold filed the present Motion for Reconsideration and To Re-Argue that decision, submitting two reports of alleged experts, which experts Plaintiff contends meet her burden of proof on causation.

### STATEMENT OF FACTS

The pertinent facts of this case are set forth in the Court's Rulings on Motion to Have the Court Appoint Expert Witnesses and the Motion for Summary Judgment. The Court assumes familiarity with those decisions, and sets forth herein only those additional facts necessary to an understanding of the issues raised in, and the decision rendered on, the present Motion.

On February 28, 1998, after granting Plaintiff numerous extensions of time to comply with court-ordered deadlines, an Amended Scheduling Order was entered in this case. In pertinent part, Plaintiff was ordered to identify any expert witnesses she intended to call at trial and mail to the Defendant a copy of said experts' opinions, in compliance with Federal Rule of Civil Procedure 26(a)(2)(B), on or before March 27, 1998. Discovery was to close on June 1, 1998, dispositive motions were to be filed by June 15, 1998, with replies thereto by June 29, 1998. A tentative trial date of July 6, 1998 was set forth.

Plaintiff did not comply with the order on expert witnesses, and filed an untimely motion for extension of time to do so on April 3, 1998. Keeping Plaintiff's status of an alleged *pro se* party to the forefront, the Court granted the motion.

On April 6, 1998 Plaintiff filed a list of fifteen names with addresses (in some instances, incomplete addresses) from all over the country. She did not file any documents whatsoever in compliance with Rule 26(a)(2)(B). Rather, the Court, and the Defendant, were left to speculate as to who these individuals were and what relevant testimony they would possibly offer at the trial of this case.

With their opposition to the present Motion, Defendant has filed a copy of a letter it sent to Plaintiff on April 9, 1998. The letter clearly spells out to Ms. Gold what her responsibilities were under Rule 26(a)(2)(B) and that her list of names was legally unacceptable under that Rule. Accordingly, Defendant requested the lacking experts' reports. Defendant further advised Ms. Gold that, if it had not received the required reports by April 15, 1998, it intended to move for summary judgment, raising her lack of an expert witness as a basis for dismissal of her case. Plaintiff replied that she had consulted an attorney, and stated her position that she need not provide expert opinions until she had actually retained an expert. She did not address the fact that her deadline for retaining an expert had already passed.

*2 On April 24, 1998, having received no compliance from Plaintiff, Defendant moved for summary judgment.

On May 11, 1998, while the Motion for Summary

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 422900
(Cite as: 1998 WL 422900 (D.Conn.))

Page 2

Judgment was pending, Plaintiff moved the Court to appoint expert witnesses for her, pursuant to Federal Rule of Evidence 706. After due consideration, the request was denied on June 3, 1998. On June 8, 1998, more than two months after her original Rule 26(a)(2)(B) deadline, Plaintiff filed a Motion for Extension of Time in which to obtain an expert witness. On June 15, 1998, the Court determined that this Motion, unlike her five previous Motions for Extension of Time, should be denied. The Ruling granting Defendant's Motion for Summary Judgment was also issued on that date.

*LEGAL ANALYSIS*
I. *The Standard of Review*

Plaintiff has filed her Motion for Reconsideration and to Re-argue pursuant to Local Rule of Civil Procedure 9(e). The Second Circuit Court of Appeals has held that motions for reconsideration under this Local Rule are, as a practical matter, the same thing as motions for amendment of judgment under Federal Rule of Civil Procedure 59(e)--each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance. "As such ... we believe that a motion under local rule 9(e) must be treated the same as a motion under Rule 59." *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir.1991).

A motion for reconsideration made pursuant to Rule 59(e) must adhere to stringent standards. *Oxford House, Inc. v. City of Albany*, 155 F.R.D. 409, 410 (N.D.N.Y.1994). A plaintiff filing such a motion faces a heavy burden in pursuing such a motion. *Wilson v. Consolidated Rail Corp.*, 815 F.Supp. 585, 586 (N.D.N.Y.1993). The court's rulings under the rule are "committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983).

Rule 59(e) recognizes only three possible grounds for any motion for reconsideration: (1) an intervening change in the law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice. *Doe v. New York City Dep't. of Social Services*, 709 F.2d 782, 789 (2d Cir.), *cert. denied sub nom. Catholic Home Bureau v. Doe*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Prong one clearly has no applicability to the present Motion. Hence, the Court will examine only prongs two and three, seriatim.

II. *The Standard As Applied*

As to the second prong, the Court holds that the two letters from Plaintiff's alleged experts are too little, too late. As noted above, Plaintiff virtually ignored the Court Scheduling Order as to the notification of Defendant as to her expert witnesses. It was not until days after the due date that Plaintiff even moved for an extension of time and, when granted, Plaintiff filed a mere list of names and some addresses, completely avoiding the dictates of Rule 26(a)(2)(B). Plaintiff filed another belated motion for extension of time to obtain expert witnesses on June 8, 1998, two months after the deadline had passed. The affidavit from her lawyer-advisor admits that he never contacted Dr. Weinstein until April 30, 1998, weeks after the deadline had passed and after the motion for summary judgment was already pending.

*3 The proffer of the two doctors' testimony is still not in compliance with Rule 26(a)(2)(B). As to Dr. Weinstein, his current proffer is in direct contradistinction to his contemporaneous notes of twenty years ago when he served as Plaintiff's treating physician. Nowhere in any of his notes, during his entire history of treating her, does he opine that Plaintiff was suffering, or had suffered, from pelvic inflammatory disease. Further, it is simply not credible that, if this evidence was to be presented at the trial of this matter, Plaintiff exercised any form of due diligence in securing an opinion allegedly twenty years old any sooner than the present. [FN1]

> FN1. The Court notes further that Dr. Weinstein's letter does not contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by him in forming his opinion; any exhibits to be used as a summary of or support for his opinion; his qualifications; his compensation; and a listing of any other cases in which he testified as an expert. Fed.R.Civ.P. 26(a)(2)(B).

Dr. Sweet's letter is also merely conclusory and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 422900  
(Cite as: 1998 WL 422900 (D.Conn.))

Page 3

fails to meet the standards of Rule 26(a)(2)(B). His cursory three-paragraph letter does not contain a complete statement of all opinions to be expressed and the basis and reasons therefore; all of the data or other information considered by him in forming his opinion; any exhibits to be used as a summary of or support for his opinion; his qualifications and publications; his compensation; and a listing of any other cases in which he testified as an expert. Fed.R.Civ.P. 26(a)(2)(B). Most importantly, his conclusion that "the defective design of the Dalkon Shield and its tail-string increased the risk for Ms. Gold to develop pelvic inflammatory disease" is not supported in any manner in his alleged "expert" opinion. It does not appear that Dr. Sweet has even examined Plaintiff.

It also is not credible that Plaintiff could not have secured this letter in a time concordant with this Court's Scheduling Order. Dr. Sweet's name and address, with no other information at all, was filed with this Court on April 6, 1998. It is unacceptable, therefore, that his written report was not prepared or filed until two and one-half months later, after summary judgment had been granted.

For these reasons, then, the Court holds that prong two of the *Doe* test is not met herein. The proffered letters are simply not "new evidence previously unavailable."

As to prong three, the Court holds that no clear error of law was made or that a manifest injustice needs to be prevented. First, the Court held that expert testimony was required when the factual content of the underlying issues is not found within the lay persons' common knowledge and experience and that such testimony was required in this case. It is beyond cavil that this holding is not unprecedented, novel, or a remarkable proposition of law. This Court is convinced that no "clear error of law" has been made in so holding.

Second, if any manifest injustice is implicated in the consideration of this Motion, it would be from the granting of the Motion, and it would be to Defendant. Defendant has attempted to work diligently and responsibly with Plaintiff, her constant vilification of Defendant aside. The Trust advised Ms. Gold, in advance, that if she continued to fail to comply with the Court's Scheduling Order, that it would move for summary judgment. This was an uncommon courtesy.

*4 Further, Judge Robert R. Merhige, before whom all the nation-wide Dalkon Shield litigation was pending, ordered that trial of all Trust cases be commenced on or before July 31, 1998. Plaintiff has known of this deadline since Judge Merhige entered Administrative Order No. 2 on October 31, 1997. She also knew that this Court intended to comply with this Order by scheduling a July trial date. Despite this knowledge--and to the great detriment of the Trust--Plaintiff has continually failed to comply with this Court's Scheduling Order that would have permitted preparation by the parties and trial of the case within the deadline set by Judge Merhige.

Finally, this Court must comment on Plaintiff's continued insistence on her foibles and tribulations as an alleged *pro se* plaintiff. It is elementary that pleadings filed *pro se* are to interpreted liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). It is the belief of this Court that it has more than met this standard. This is regardless of the fact that Plaintiff admits that she is being advised and assisted by attorneys in this case, which attorneys have never filed a formal appearance herein. One of the attorneys has gone so far as to file two affidavits in this case setting forth the legal support for Plaintiff's position. This same attorney has also averred that he has been instrumental in securing the letters of Dr. Sweet and Weinstein. The Court now believes that Plaintiff's pleadings, seemingly filed *pro se,* have given her an unwarranted advantage of having the liberal pleading standard applied by this Court, whilst holding the Defendant to a much stricter scrutiny. *Accord Johnson v. Bd. of County Com'rs, County of Fremont,* 868 F.Supp. 1226, 1231 (D.Colo.1994), aff'd, 85 F.3d 489 (10th Cir.1996); *see also Wesley v. Don Stein Buick,* 987 F.Supp. 884 (D.Kan.1997) (court and parties have legitimate concern that attorney who substantially participates in case may be required to enter appearance and accept accountability pursuant to Rule 11 and the rules of professional conduct applicable to attorneys). For this reason, too, a manifest injustice to Defendant would occur if the Court were to grant this Motion.

*CONCLUSION*

"Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Frito-Lay of Puerto Rico, Inc. v. Canas,* 92

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 422900  
(Cite as: 1998 WL 422900 (D.Conn.))

Page 4

F.R.D. 384, 390 (D.P.R.1981). For this reason, and the reasons set forth herein, Plaintiff's Motion For Reconsideration and to Re-argue [Doc. No. 91] is DENIED.

The Clerk is directed to close this file.

SO ORDERED

1998 WL 422900, 1998 WL 422900 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works